```
                    UNITED STATES DISTRICT COURT
                    NORTHERN DISTRICT OF INDIANA
                         HAMMOND DIVISION

MARIANNE BEAL,                      )
                                    )
          Plaintiff                 )
                                    )
     v.                             )   Case No. 2:04 cv 250
                                    )
NATIONAL RAILROAD PASSENGER         )
CORPORATION; CSX CORPORATION;       )
CSX TRANSPORTATION, INC.; CSX,      )
                                    )
          Defendants                )
```

OPINION AND ORDER

This matter is before the court on the following motions: the Motion for Partial Summary Judgment filed by the defendants, National Railroad Passenger Corporation (d/b/a "Amtrak"), CSX Corporation, and CSX Transportation, Inc. (hereinafter collectively "CSX"), on August 25, 2005 and reinstated on December 14, 2005; the Motion to strike the Affidavit of Robert W. Halstead filed by the defendants on May 1, 2006; the Supplemental Motion [for] Summary Judgment on All Claims filed by Amtrak and CSX on May 5, 2006; and the Motion for Entry of Final Judgment Pursuant to Rule 54(b) filed by CSX on June 14, 2006.  For the reasons set forth below, all of these motions are **GRANTED IN PART** and **DENIED IN PART** except the Motion for Entry of Judgment which is **GRANTED**.

Background

This case arises from a train and vehicle collision on January 8, 2004.  The plaintiff, Marianne Beal, and her boyfriend, Charles Stinson, were driving home from work when an Amtrak train struck the car, killing the driver, Stinson, and injuring the passenger, Beal.  It is undisputed that the train

was traveling 79 miles per hour, which is within the 80 mph speed limit established by the transportation regulations for the relevant class of train tracks.  *See* 49 C.F.R. §213.9(4).

In Count I of her Amended Complaint, Beal alleges that the defendants were negligent in maintaining and operating the crossing gates, warning devices, and related equipment.  On August 25, 2005, the defendants first filed a motion for partial summary judgment (later reinstated), seeking to establish that any Count I claims related to excessive speed were preempted by the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. §201061 *et seq.*  In response, Beal stated that she had not asserted a claim regarding excessive speed.  However, she chose to respond to the motion because she did not want to be bound by collateral estoppel on the issues of failure to keep a proper lookout and to brake timely, which she argues fall under the "specific individual hazard" exception to federal preemption of train speed-related tort claims.

On May 5, 2006, shortly after the first motion for summary judgment was briefed, the defendants filed the second motion for summary judgment.  In this motion, the defendants seek summary judgment on Count I under the alternative theory that Beal's injuries were not "proximately caused" by the defendants.  Thus, the defendants have divided the "duty" and "proximate cause" elements for one of Beal's negligence claims into two motions for summary judgment.  In responding to the second motion, Beal concedes that summary judgment must be granted in favor of CSX on

all claims.  (DE 69, p. 1) Therefore, the "duty to maintain" claim in Count I and all of Count II, for placing defective equipment in the stream of commerce, fail.  Count III, for negligent and/or intentional infliction of emotional distress, has not been briefed by the parties.  Consequently, this claim survives summary judgment.

Other than Count III, the only remaining claims are the "duty to operate" negligence claims specific to Amtrak.  The two operational duties that Beal alleges Amtrak breached are 1) the duty to maintain a proper lookout and 2) the duty to brake timely.  (Response PMSJ, p. 6) However, Beal has neither briefed nor provided any evidence in support of the duty to maintain a proper lookout, so summary judgment must be granted on this claim.  Consequently, the only narrow issue before the court is whether the facts of this case constitute a "specific individual hazard" that allows Beal to avoid preemption on the "duty to timely brake" claim.

## Discussion

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is proper only if it is demonstrated that "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." *See* ***Celotex Corp. v. Catrett***, 477 U.S. 317, 322-23, 91 L.Ed.2d 265, 106 S.Ct. 2548 (1986); ***Lawrence v. Kenosha County***, 391 F.3d 837, 841 (7th Cir. 2004); ***Branham v. Snow***, 392 F.3d 896, 901 (7th Cir. 2004); ***Windle v. City of Marion***, ***Indiana***, 321 F.3d 658, 660-61 (7th Cir. 2003),

*cert. denied*, 540 U.S. 873, 124 S.Ct. 873, 157 L.Ed.2d 133 (2003).  The burden is upon the moving party to establish that no material facts are in genuine dispute, and any doubt as to the existence of a genuine issue must be resolved against the moving party.  *Adickes v. S.H. Kress & Company*, 398 U.S. 144, 160, 90 S.Ct. 1598, 1610, 26 L.Ed.2d 142, 155 (1970); *Lawrence*, 391 F.3d at 841. A fact is material if it is outcome determinative under applicable law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202, 212 (1986); *Ballance v. City of Springfield, Illinois Police Department*, 424 F.3d 614, 616 (7th Cir. 2005); *Hottenroth v. Village of Slinger*, 388 F.3d 1015, 1027 (7th Cir. 2004); *Palmer v. Marion County*, 327 F.3d 588, 592 (7th Cir. 2003).  Even if the facts are not in dispute, summary judgment is inappropriate when the information before the court reveals a good faith dispute as to inferences to be drawn from those facts.  *Spiegula v. Hull*, 371 F.3d 928, 935 (7th Cir. 2004); *Hines v. British Steel Corporation*, 907 F.2d 726, 728 (7th Cir. 1990).  Finally, summary judgment "will not be defeated simply because motive or intent are involved." *Roger v. Yellow Freight Systems, Inc.*, 21 F.3d 146, 148 (7th Cir. 1994).  *See also Miller v. Borden, Inc*., 168 F.3d 308, 312 (7th Cir. 1999); *Plair v E.J. Brach & Sons, Inc.*, 105 F.3d 343, 346 (7th Cir. 1997); *United Association of Black Landscapers v. City of Milwaukee*, 916 F.2d 1261, 1268 (7th Cir. 1990).

In deciding a motion for summary judgment, the trial court must determine whether the evidence presented by the party

4

opposed to the summary judgment is such that a reasonable jury might find in favor of that party after a trial.

> The inquiry performed is the threshold inquiry of determining whether there is the need for a trial--whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.
>
> [T]his standard mirrors the standard for a directed verdict under Federal Rule of Civil Procedure 50(a), which is that the trial judge must direct a verdict if, under the governing law, there can be but one reasonable conclusion as to the verdict.
>
> ***Anderson***, 477 U.S. at 250, 106 S.Ct. at 2511

*See also* ***Reeves v. Sanderson Plumbing Prods., Inc***., 530 U.S. 133, 149-151, 120 S.Ct. 2097, 2109, 147 L.Ed.2d 105, 120-22 (2000) (setting out the standard for a directed verdict); ***Celotex Corp.***, 477 U.S. at 322-323, 106 S.Ct. at 2553; ***Branham***, 392 F.3d at 901; ***Lawrence***, 391 F.3d at 841; ***Hottenroth***, 388 F.3d at 1027 (stating that a genuine issue is one on which "a reasonable fact finder could find for the nonmoving party"); ***Schuster v. Lucent Technologies, Inc***., 327 F.3d 569, 573 (7th Cir. 2003)(stating that a genuine issue exists and summary judgment is inappropriate if there is sufficient evidence for a jury to return a verdict for the nonmoving party).

Tort claims related to the speed of a train generally are preempted by the FRSA if the train is traveling within the speed limit.  *See* ***CSX Transportation, Inc. v. Easterwood***, 507 U.S. 658, 675, 113 S.Ct. 1732, 1743, 123 L.Ed.2d 387 (1993); ***Anderson v.***

5

*Wisconsin Central Transportation Company*, 327 F.Supp.2d 969, 977 (E.D. Wis. 2004).  However, the presence of a "specific, individualized hazard" may be an exception to this rule.  See *Easterwood*, 507 U.S. at 675 n.15, 113 S.Ct. at 1743 n.15 (expressly declining to reach whether such a hazard would "bar suit for breach of related tort law duties").

Neither the Supreme Court nor the Seventh Circuit has defined the contours of the specific, individualized hazard exception. See *Anderson*, 327 F.Supp.2d at 977.  The predominant view of the exception refers "to a transient condition that could lead to a particular accident."  *Price v. National Railroad Passenger Corporation*, 14 P.3d 702, 707 (Utah App. 2000).  The hazard "is a person, vehicle, obstruction, object or event which is not a fixed condition or feature of a crossing and cannot be addressed by a uniform, national standard."  *Anderson*, 327 F.Supp.2d at 978.  See also *Liboy v. Rogero*, 363 F.Supp.2d 1332, 1340 (M.D. Fla. 2005) ("[A] specific, individual hazard, rather than being a generally dangerous railroad crossing, is a unique occurrence giving rise to an imminent threat of collision); *Shaup v. Frederickson*, No. Civ. A. 97-7260, 1998 WL 726650, at *10-11 (E.D. Pa. 1998); *O'Bannon v. Union Pacific Railroad Company*, 960 F.Supp. 1411, 1420 (W.D. Missouri 1997); *Herriman v. Conrail, Inc.*, 883 F.Supp. 303, 307 N.D. Ind. 1995).

A train engineer

> has a right to assume, until the contrary
> becomes evident, that one approaching the
> track in an automobile will give the train

6

>           the right of way, and is not required to
>           attempt to bring his train to a standstill
>           because the automobile may be seen to be
>           approaching the track, but has a right to
>           assume, until the contrary appears, that the
>           occupants of such automobile will use reason-
>           able care for their protection, and will give
>           the train the right of way to which it is
>           entitled under the law.
>
>           *Price*, 14 P.3d at 708 (*quoting* *Klouse v.
>           Northern Pacific Railway Company*, 312 P.2d
>           647, 651 (Wash. 1957))

*See also* *Liboy*, 363 F.Supp.2d at 1340 n.10.  Consequently, the duty to brake may not arise until a car actually drives onto the railroad tracks.  *Price*, 14 P.3d at 708.

However, the duty also may arise when the movement of a vehicle alerts or should have alerted a train operator that something is wrong.  *See* *Anderson*, 327 F.Supp.2d at 979; *Shaup*, 1998 WL 726650, at *11; *Central of Georgia Railroad Company v. Markert*, 410 S.E.2d 437, 852-53 (Ga. App. 1991).  Thus, the "unwaivering approach of a vehicle" is a specific, individual hazard.  *Alcorn v. Union Pacific Railroad Company*, 50 S.W.3d 226, 242 (Missouri 2001).  Similarly, "an engineer who sees a motorist stranded on the crossing, but nevertheless negligently fails to stop or slow his train to avoid the collision," cannot claim preemption, but still may avoid liability if the accident was unavoidable.  *Herriman*, 883 F.Supp. at 307.  *See also* *Liboy*, 363 F.Supp.2d at 1340 n.10.

The facts in this case are too much in dispute to be amenable to summary judgment.  First, the parties dispute whether the car went around the crossing gates or slid into the path of the

7

oncoming train.  Beal's deposition testimony, sworn affidavit, and statements to police consistently take the position that the car slid onto the tracks.  However, Beal argues in response to the motions for summary judgment that the car slid onto the tracks, and at the same time, that the train engineer had time to stop because he saw the car slow and go around the gate.  (*See* Response to Supp. MSJ, p. 6)  In deciding a motion for summary judgment, the court must look at the facts in the light most favorable to the nonmoving party, regardless of whether those facts come from the plaintiff or defendant.  *See* ***Pourghoraishi v. Flying J., Inc.***, 449 F.3d 751, 762-63 (7th Cir. 2006).  However, it is not clear which set of fact is more favorable to the plaintiff here because too much is unknown about the timing and sequence of events under either fact pattern.

Furthermore, the length of time the car was on the tracks prior to impact is critical to a determination of whether Amtrak was negligent.  Beal claims that the car took five seconds to slide onto the tracks and then was stopped for an additional five seconds.  Train engineer Shawn Rose testified that the total time, from when he first saw the car 15 or 20 feet away from the crossing until the point of impact, was only two or three seconds.  (Marianne Beal Aff.; Shawn Rose Dep. pp. 94-98)  The parties also disagree as to whether the car "fishtailed" or showed other signs of distress.  (Marianne Beal Dep. p. 26; Rose Dep. p. 98)

8

Finally, the court cannot determine how much time actually passed, if any, after the impact and before the train's brakes were applied.  Both parties have provided detailed data from the event recorder on the train, but neither party has provided an expert opinion or interpretation of that data that pinpoints the precise moment of impact relative to the moment Rose applied the brakes. Beal's allegation that Rose did not utilize the emergency braking until after impact rests on a written accident report in which Rose stated that he "then" placed the train in emergency mode. (*See* Shawn Dep. Exh. 2)  Another police report reports that Rose used the emergency brake "upon impact." (APD Narrative of 1-8-04) Because these factual disputes prevent the court from determining what actually occurred and when, summary judgment cannot be granted.

The parties dispute whether the affidavit of plaintiff's expert, Robert Halstead, should be stricken from the record. Federal Rule of Evidence 702 states:

> If scientific, technical, or other special-ized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and meth-ods reliably to the facts of the case.

Thus, Rule 702 supplies a two-part test for the admissibility of expert testimony: first, the court must determine whether the

9

expert is properly qualified, and second, whether the expert's testimony is relevant and reliable. *See generally* **Daubert v. Merrell Dow Pharmaceuticals**, 509 U.S. 579, 597, 113 S.Ct. 2786, 2799, 125 L.Ed.2d 469 (1993); **United States v. Garcia**, 439 F.3d 363, 366 (7th Cir. 2006); **O'Connor v. Commonwealth Edison Co.**, 13 F.3d 1090, 1106 (7th Cir. 1994).  Amtrak does not object to Halstead's qualifications, and so any objections under the first part of the analysis are waived.  The second portion of the test requires an application of **Daubert** and its progeny. *See, e.g.,* **Fuesting v. Zimmer, Inc.**, 421 F.3d 528, 534-35 (7th Cir. 2005).

Under **Daubert**, the court must make a "preliminary assessment of whether the reasoning or methodology underlying the [expert] testimony is scientifically valid and [] whether that reasoning or methodology properly can be applied to the facts in issue" when determining whether an expert's opinion is admissible. *See* 509 U.S. at 592-93, 113 S.Ct. at 2796. Rule 702 is based "on the 'assumption that the expert's opinion will have a reliable basis in the knowledge and experience of his discipline.'" **Kuhmo Tire Company, Ltd. v. Carmichael**, 526 U.S. 137, 148, 119 S.Ct. 1167, 1174, 143 L.Ed.2d 238 (1999)(*quoting* **Daubert**, 509 U.S. at 592, 113 S.Ct. at 2796). The court must reject unsupported speculation as well as testimony that is based on unreliable methodology. *See* **Ammons v. Aramark Uniform Services, Inc.**, 368 F.3d 809, 815-16 (7th Cir. 2004).

According to his deposition, Halstead calculated the difference in the number of feet a train traveling 79 miles per hour

10

would have covered in 10 seconds with and without an application of the emergency brake to conclude that Stinson would have had .63 seconds more time to get off the tracks had the emergency brake been applied when Stinson first attempted to stop his vehicle. (Robert Halstead Dep. p. 8) Halstead further stated that in his opinion, "the earlier application of the emergency brakes would have allowed Plaintiff's vehicle to have cleared the tracks in a manner that would either have avoided the collision altogether or resulted in substantially less damage to the car with little or no injury to the occupants." (Halstead Aff. pp. 2-3) Halstead reached this conclusion without any knowledge of where the car was when the crossing gates started to come down, how long it took the car to reach the crossing, and whether engineer Rose could have seen the car when Stinson began to brake, even though he acknowledged that Rose would have had no duty to break until he saw the car. (Halstead Dep. pp. 21-22) He testified that "[t]en seconds is simply the number that was given to me." (Halstead Dep. p. 8)

He further testified that his opinion was based on the belief that Stinson was ejected from the vehicle. (Halstead Dep. pp. 31-32) This creates another factual dispute because the initial crash report completed by officer Agnes Roberts described Stinson as "ejected," rather than "partially ejected," but then locates Stinson's body partially in the vehicle.  Her affidavit, attached to the report, states that Stinson remained "partially inside the vehicle secured by his seat belt." (Agnes Roberts

11

Aff.) It is not clear whether Halstead's opinion would change based on the fact that Stinson remained in his seat belt.

Regardless, Halstead's opinion regarding the collision is rooted in the plaintiff's testimony that ten seconds passed between braking and impact, rather than any independent inquiry, scientific or otherwise. It also is legally incompetent, as a train engineer is under no duty to apply his brakes when a driver approaching the tracks begins to brake.  There is no evidence that Rose knew that Stinson applied his brakes as Beal has alleged or that Stinson could not stop his car during this five second interval.  See *Price*, 14 P.3d at 708.  Therefore, the last sentence in paragraph one of his affidavit is stricken.  Halstead may not testify as to whether the accident could have been lessened or avoided altogether.  However, Halstead may testify as to his calculations. The jury will determine what occurred in this case and then decide what weight should be accorded Beal's testimony and by extension, Halstead's calculations.

Finally, CSX has asked for entry of final judgment pursuant to Federal Rule of Civil Procedure 54(b).  In a multi-party case, it is within the discretion of the district court to determine whether a final judgment should be entered in favor of one party when all of the claims against it have been dismissed. *Cooper Power Systems, Incorporated v. Union Carbide Chemicals & Plastics Company, Incorporated*, 23 F.3d 675, 679 n.1 (7th Cir. 1997).  As a general rule, judgments under Rule 54(b) are disfavored because they permit piecemeal appeals.  In the instant case, the plain-

12

tiff has agreed to the entry of judgment in favor of CSX. Therefore, "there is no just reason for delay" and judgment will be entered in favor of CSX.

_____

For the foregoing reasons, the Motion for Partial Summary Judgment filed by the defendants, National Railroad Passenger Corporation (d/b/a "Amtrak"), CSX Corporation, and CSX Transportation, Inc. (hereinafter collectively "CSX"), on August 25, 2005 and reinstated on December 14, 2005 is **GRANTED IN PART** and **DENIED IN PART**, the Motion to Strike the Affidavit of Robert W. Halstead filed by the defendants on May 1, 2006 is **GRANTED IN PART** and **DENIED IN PART**, and the Supplemental Motion [for] Summary Judgment on All Claims filed by Amtrak and CSX on May 5, 2006 is **GRANTED IN PART** and **DENIED IN PART**. The Motion for Entry of Final Judgment Pursuant to Rule 54(b) filed by CSX on June 14, 2006 is **GRANTED**. The Clerk is **DIRECTED** to enter judgment in favor of the defendants, CSX Corporation and CSX Transportation, Inc. Count III for infliction of emotional distress remains in this case for failure to brief. Genuine issues of material fact preclude summary judgment on Beal's "duty to brake" claim.

ENTERED this 27th day of July, 2006

                                            s/ ANDREW P. RODOVICH
                                              United States Magistrate Judge